May it please the court. Good afternoon. My name is Yance Faulkner and I represent the plaintiff appellant in this case, Ms. Brenda Gross. Ms. Gross has suffered most of her life from the condition of diabetes. The diabetes causes ulcers to form on Ms. Gross' feet and over the course of her life those ulcers have progressively gotten worse to the point where she has about half of her toes left on both of her feet. Ms. Gross worked for about 20 years for the defendant appellee in this case, Carlisle Construction Materials. At no point did anyone raise any issues about Ms. Gross' performance, but as her feet worsened, Ms. Gross did begin to request certain accommodations for her feet. In April of 2022, rather than accommodate Ms. Gross' request, Carlisle terminated Ms. Gross' employment which gave rise to this lawsuit arising under the Americans with Disabilities Act. Ms. Gross brought claims for failure to accommodate and for disability discrimination. About a month before this case was set to go to trial before a jury, the district court granted the defendant's motion for summary judgment and dismissed the case which gives rise to this appeal. Ms. Gross asked that the court reverse the district court's grant of summary judgment for three leading reasons. First, the district court decided as a matter of law that Ms. Gross was not a qualified individual under the Americans with Disabilities Act. That is a question of fact that should have been submitted to the jury. Second, there was no evidence in the record that even suggested that the defendant had engaged in the interactive process with Ms. Gross to determine what reasonable accommodations might have been available. That is per se a violation of the Americans with Disabilities Act. Third, a jury, not a judge, should have determined whether Ms. Gross' request for accommodations were reasonable or whether there were other reasonable accommodations that were available that would have allowed Ms. Gross to continue in her job. As to that first point, the district court, and there's some discussion on this in the briefing, but the district court based the majority of its holding on its finding that Ms. Gross was not a qualified individual. Of course, the definition of a qualified individual under the Americans with Disabilities Act is whether or not that individual can perform the essential functions of his or her job with or without a reasonable accommodation. The appellant cited in our brief the Cleveland v. Systems Management Corporation case from the Supreme Court, which clearly states that the question of whether or not someone is a qualified individual is a question of fact, and that's something that should be submitted to the jury unless there's uncontroverted evidence, no genuine issue of material fact that they were not a qualified individual. In this case, the defendant did not meet that standard. The vast majority of Ms. Gross' allegations are undisputed. There is very little . . . It's a good question, Your Honor, and the only evidence at the time that Ms. Gross was fired, that was in, I believe, on April the 6th of 2022, and at the time that Ms. Gross was fired, there is no evidence that there was a vacant position. The only evidence was a declaration from one of the defendant's employees who testified that there were no vacant positions at the Senatovia plant, and that's where Ms. Gross worked, and that was at the time that she was terminated on April 6th, 2022. The problem with that is that Ms. Gross had been requesting accommodations for months leading up to her termination, and Ms. Gross testified that in late 2021, while Ms. Gross was still working at the plant, a position became available that she requested to be moved to. That position would have allowed her to sit and be off of her feet, which was the biggest time off of her feet. That's the one that was filled silently? Correct, Your Honor. Ms. Gross' testimony . . . Again, this is undisputed. There is no contravening evidence against Ms. Gross to say that what she's saying is untrue, but she testified that one of her coworkers, a Mr. Foddy, had passed away, and Ms. Gross knew about his position as she had worked there for almost 20 years, and she knew about his position, knew that she was qualified for it, and asked one of her supervisors about that job. She was told that it would be posted. It was never posted, and it was filled by someone else who was doing the same job as Ms. Gross. They came from the same department, and the job was filled by that other person, and there's no testimony to dispute that. Ms. Gross' allegation that that job was available and that she requested it is undisputed. The statutory language is that one of the things that could be a reasonable accommodation is being transferred to a vacant position. That list is never meant to be exhaustive, and in some cases, it may not be reasonable, but in this case, there's no testimony that that transfer to the vacant position wasn't reasonable. There's no testimony that Ms. Gross wouldn't have been qualified for that job. There's not even any testimony that that job was not vacant at the time that Ms. Gross said that it was, and so it was filled by someone else, and I think it should have been submitted to a jury, at least, whether or not that was a reasonable accommodation request to be transferred into that position, but as far as the summary judgment standard, that's uncontroverted. But wasn't the job filled in November of 2021, and she wasn't terminated until April of 2022? Your Honor, I'm not sure that Ms. Gross stated the exact date, but she believed it was around November 2021 that it was filled, yes. Well, if it was filled six months before she was terminated, then how was it vacant when she was terminated? It wasn't vacant when she was terminated, Your Honor, but that's the purpose. She was requesting accommodation before she was terminated, and what the statute requires is for the employers to engage in some sort of interactive process, and the employee can initiate that process by requesting a certain accommodation, and in this case, one of the ways, and there are numerous ways, if you look at the appellant's brief on page 17, we cite to a couple of different instances where Ms. Gross requested accommodations. This is just one of them that was the closest to her termination, and one of the ways that the appellant, or that an employee can kind of start that interactive process is by requesting accommodation specifically. They don't have to. Sometimes they can just say, I need an accommodation, but Ms. Gross went that extra step and requested one that was specific to her and requested to be moved into that job. When they deny that reasonable accommodation and then didn't engage in an interactive process with Ms. Gross to see if there was another way that they could accommodate her, that's when they violate the statute. The factors for whether or not there was a violation of the duty to reasonably accommodate is simply that the person has a disability and is qualified, that the employer is aware of the disability, and that they failed to reasonably accommodate that disability, and the only dispute here that the district court really had was whether or not she was qualified. The district court did not discuss whether or not her request to be moved to that vacant position would have been reasonable or not, because the defendant never tried to say that it wasn't reasonable. They never gave any testimony or any argument as to why Ms. Gross was not transferred into that position. Shortly after, I think this is getting to your question, Judge Ramirez, if I haven't answered it, please let me know, but shortly after she was denied that transfer, her ulcers flared up again, and she goes back out on work, and there's no more engagement in the interactive process after that either, and as she tries to start coming back to work, she's terminated instead, and so there was no engagement from the employer's side into the interactive process to see if there was a way that Ms. Gross could have kept her job. Is your argument about whether the question of whether she was a qualified individual was a fact issue that should have gone to the jury, does that go to the failure to accommodate claim? It goes to both claims, Your Honor. The qualified individual is a requirement for both claims. I talked about the factors for the failure to accommodate earlier, and for the disability discrimination, the factors are that they're a qualified individual, and that they have a disability, they're qualified for the job, and that they were terminated because of their disability, and again, the judge found that she wasn't a qualified individual, and so there was no real discussion about that causation element, that third element about whether or not the disability caused her termination, and I think that's because it's all but conceded in the record that she was terminated for her disability. Well, I just want to be sure, because the elements for each of those claims are, they're similar, but worded slightly differently, so you use the wording from the failure to  Let's talk about the discrimination claim. What evidence in the record did your client point to on summary judgment that created a fact issue as to pretext? Sure, Your Honor, and I will point out, the elements are different. I think they're very similar in the sense that if you find there's a claim for failure to accommodate, and there is a termination, if you follow me here, there's a claim for failure to accommodate, and then there's a termination, and you can point to that failure to accommodate as being part of the termination decision, then you naturally have a claim for both of these two different claims. What's your best case for that proposition that you stated? That's a great question, Your Honor, and I don't have a case for that. I don't have a case that discusses that specific issue, and just practically speaking, I think I know why, is that in these failure to accommodate cases, there's not always a termination. A lot of times, those arise while the person still worked there. Sometimes they don't, and once it goes to the jury, when you get to the jury instruction phase, if you have a better case for the failure to accommodate, you might only submit jury instructions on the failure to accommodate, because it fits more neatly for a jury to swallow, and you might not want to submit both to the jury. I'm speculating a little bit there, but I don't have a case that discusses that specifically. I can just talk about how closely the elements are read.  Well, back to my question, then, because pretext is something you have to show for the discrimination claim, not necessarily for the failure to accommodate claim right, so what evidence of pretext is there in the record? Your Honor, the reason that the defendant gave for terminating Ms. Gross's employment is that she transferred to long-term disability, and the record's clear that that was not a request made by Ms. Gross. Defendant's witness, Ms. McGowan, in her declaration said that's just Carlisle's policy. After a certain amount of time, they transferred an employee from short-term disability to long-term disability. I don't really know that there's a question, or let me rephrase that. I would submit to you that there's not a question that the decision was made based on Ms. Gross's disability, because the only way that you could get to transfer her to long-term disability was by her disability. The only question, then, is whether or not she was a qualified individual. There's not a whole lot to discuss on pretext, because if you find that she's a qualified individual, then it's a jury question as to whether or not her disability caused her termination, or whether there's some non-discriminatory reason, but when her disability is the reason that she's terminated, there's not really a question there. I'd struggle to call it a direct evidence case, just because those are so rare, but this is about as close as you can get to direct evidence, when the only proper reason is, you're disabled. Because of your disability, we're going to transfer you to long-term disability, and our policy is that you're terminated at that moment. There's not really much to argue on pretext, because the question of what caused her termination is just her disability. There's not an argument that she was terminated because of poor performance, or that she was terminated for absenteeism. Sure, but where does the inability to do her job fall into the equation? That's the qualified individual portion of the analysis, Your Honor, is whether or not Ms. Gross could do her job, with or without a reasonable accommodation. And there's just a pure question of fact on that. It seems to me that the job description that the defendant submitted with his motion for summary judgment, that the district court cited to, stated some of the qualifications as standing. And if the job required 70% standing and 15% kneeling or lifting, and some other duties sort of like that, and it seemed to me that the district court did not think that Ms. Gross could stand, because that's the only job description, or portion of the job description that the district court cited to, was that standing and kneeling, and there's no dispute in the record that Ms. Gross can't stand, and she can walk. What she testified to was that she needed to be off of her feet, maybe more than the worker beside her, because of these ulcers. And that's what her doctor had suggested, and what her doctor had submitted to her employer, is to find a way to accommodate her to get her off of her feet more. And specifically pointed to, I believe it was in 2021, when Ms. Gross had been moved from an eight-hour shift to a 12-hour shift, and how that extra four hours on shift might be contributing to this deterioration of her ulcers. And so, there's no question that she could do her job. She was doing her job in late 2021, before she went out because of this flare-up with her ulcer. There's no question that she could physically do the functions of her job. The question is whether or not she could be reasonably accommodated, and in my opinion, the district court just missed that, and they decided that she was not a qualified individual, because she asked for an accommodation. It seems to me that the district court said, if you ask for an accommodation, you can't do your job. I see that I'm low on time, so I'll let the appellee continue. Your time's up, and mine's not up. Let me ask you a question. Sure, Judge. In light of your statement earlier, that there were no vacancies, what's your best argument that the firing was pretextual? Well, Your Honor, because Ms. Gross was trying to come back to work with some sort of accommodation. I'm sorry? Ms. Gross was trying to come back to work with some sort of accommodation, and rather than engage in a process, she got a, rather than the employer engaging in a process to discuss what accommodations were needed for her to come back to work, she got a phone And when Ms. Gross asked why she was being fired at that time, her testimony was that they responded by saying, we just decided to. So when you don't give a clear answer at the time, there's at least an inference that can be made by a jury that you're covering up some sort of discriminatory motive. Thank you, Judge. May it please the Court, Christina Guero on behalf of Carlisle Construction Materials the appellee. This is an ADA case that was properly resolved on summary judgment. The Court should affirm the District Court's judgment in favor of Carlisle on both of Gross's claims for discriminatory discharge and for failure to accommodate. With regard to Gross's discriminatory discharge claim, Carlisle moved for summary judgment on three separate grounds, and the District Court correctly granted summary judgment on those three independent grounds. The District Court correctly determined, and that's from page 586 on the record, the District Court's order specifically stated that the Court determined that Gross has not shown that she was a qualified for the job of production operator at the time of her termination. That goes to the first element of the claim, whether she is qualified for the job under the ADA. The Court also goes on and says, nor can Gross, nor that Carlisle terminated her because of her disability. That goes to causation. So the order on page 586 of the record states that Gross could not show that Carlisle terminated her because of her disability, which is causation. In addition, the order specifically says, from the District Court says, that the District Court states that Gross cannot show that Carlisle's stated reason for her termination of employment, that is, her transition to long-term disability, was protectual to support the discriminatory discharge claim. In this appeal, Gross only challenges the first element, which is whether she is a qualified individual under the ADA. She does not at all discuss the causation element, nor does she provide any briefing or challenge or provide any issues in her appeal brief with regard to pretext. Because those two grounds remain unchallenged, they should be affirmed on that basis alone. In the appellant's reply brief, the appellant just completely ignores the District Court's order stating that the District Court focused only on the first element, which is whether she was a qualified individual under the ADA. And the reply brief cites to page 586 of the record for that proposition, however, that's an incorrect cite. What they actually quote is the language from the record that appears on page 582, where the court is barely beginning its discussion and saying, in order to survive summary judgment, Gross must show that she's a qualified individual. And that's just a threshold issue. So the court talks about what the threshold issue is. But if we look at the record on page 581, right before that, the court does identify that Carlisle has moved for summary judgment on those three independent grounds, that Gross is not a qualified individual, that she can't show causation, and she cannot establish pretext. Now maybe the court's order on page 586 and 587 doesn't really go into a discussion of all of those other, you know, a large discussion as to all of those other items. However, the court does have a ruling and a holding that the judgment is based on the fact that she is not a qualified individual, that she couldn't show causation, and she couldn't show pretext. The counsel on the other side says that when she received the call to say she was terminated, there was no real reason given to her for that termination, and that provides some sort of an inference. What's your response to that argument? I disagree with that argument because in the letter that she was provided, it did say that her long-term disability benefits are going to continue, which indicates that the only reason why she was terminated was because of the policy, if somebody goes on to long-term, it's determined that they cannot return to work, and they cannot perform the activities of their job, so they terminate their employment. And on the other side also says that the request to transfer to long-term disability was not done at her request. It was something that was just done by the employer. Well, that's not part of the record, and there's no indication that Carlisle has anything to do with her being put on long-term disability. That is the benefit administrator, which I can't remember the name of the company, but that's completely separate and apart, and in the termination letter it says, your benefits will continue regardless of your employment. Carlisle has no input or say as to whether somebody is on long-term disability or not. It's like when somebody goes on a workers' comp. That's determined by the doctors and by the insurance companies. The employer has no input as to whether somebody is medically able or unable to perform the functions of their job. And there's also, there's just no, nothing in the record, never in her complaint, nowhere in her deposition does she say that it was an involuntary designation. In fact, the record, we can go on to the elements of the failure to accommodate claim, because that also, the very beginning, first element for the failure to accommodate is she has to show she had, she could perform the essential functions of her position. And actually, the evidence in the record shows that she could not perform the essential functions of her position. She admitted that she could not perform the essential functions of her position during her deposition. She was specifically asked, so, it is your belief that at the time that you were terminated, you were unable to perform your usual job duties as packing production operator, is that correct?  And it says, is it for that reason that you needed to or were seeking to be transferred to another position because you could only work if you were allowed to sit down, is that correct? Correct. So, in this case, she actually admitted that she could not perform the essential functions of the position. There is no argument here that standing for prolonged periods, not just standing at all, no one is saying that she can't stand on her feet or she was wheelchair bound. We're saying that an essential function of the position, and that's not challenged, and the district court found that standing for prolonged periods of time, and weight bearing activities for prolonged periods of time, I think the job description says 70% standing, 15% walking, and then 15% bending, stooping. Now, maybe kneeling or kneeling is not on your feet, maybe that's not weight bearing, but we're talking about 80, 75 to 80% of the job requires you to be standing the entire time. Not that you can stand up at all, and that's not challenged, so that is an essential function of the job, standing for prolonged periods. And here the evidence shows, not only did she admit she couldn't do it, she also admitted that that was part of her job, that she could not perform any parts of her job while she was sitting, that the duties of production operator require you to have prolonged standing. She also testified that her doctor needed her to be off of her feet, that she was off of work and she couldn't return to work, and her doctor would not allow her to return to work unless Carlisle gave her a position where she was allowed to sit. So this is not a matter of whether this person can stand on their feet at all, this is the matter, can she perform the essential functions, and the evidence here specifically shows that she could not. Not only does she admit it, but the evidence shows that she couldn't perform the essential functions of her job. And once- What is your response to the argument that she should have been transferred to fill the vacancy in November of 21? Well, several arguments. First, those claims were never raised in the district court. They weren't brought up in the charge, and they weren't brought up in the complaint. So those were not before the court. Had they been brought in the charge, or had they been brought in for the complaint, then Carlyle would have the option to actually defend against those claims. Now, my colleague on the other side says, oh, well, the charge should be liberally construed and, you know, maybe it would have been covered. However, that's not true. Liberal construction does happen, right? Like the case that they cite, there was an intake questionnaire where there was stuff put on the intake questionnaire, and they didn't make it to the charge, but then it made it to the complaint. And the court said, you know what, we will liberally construe it. Maybe it's not an official, but they presented it, the EEOC did investigate it, so they didn't fail to exhaust their administrative remedies. Here none of that happened. She didn't exhaust her administrative remedies for those things that happened in 2016, 2017, or 2021. And when she learned that she didn't get that job, then she had the obligation, within 180 days of learning that, to file a complaint with the EEOC. She didn't do that. So not only were they not raised, but had she raised them, Carlyle would have had the opportunity to file a motion to dismiss for not only failure to state a claim for failure to exhaust administrative remedies, but also because those claims are time-barred for statute of limitations. Those issues were never before the district court. They didn't even file a motion for leave to amend their complaint. Had they filed a motion for leave to amend a complaint, Carlyle would have had an opportunity to respond and say, hey, you can't amend the complaint to add all the stuff that happened in 2016, 2017. The Supreme Court has determined, and this court has also addressed that issue, that there's no such thing as a continuing violation when we're talking about failure to accommodate claims. With regard to failure to . . . Is there a difference between using the failure to get the job as a basis for a claim of discrimination versus using it as an example of a failure to accommodate? I mean, one's evidentiary, and the other one's the basis for a charge of discrimination. Yes, there are separate claims. But here, what counsel's trying to say is that, well, she wasn't accommodated in 21. She wasn't accommodated in 2016, 2017. All of those are not applicable here because those are each discrete acts of discrimination. When you talk about failure to accommodate claim, once the employee learns that they weren't accommodated, that she learned that somebody else got the job, that she was told no, you know, she was told no, no, each time that she was told no, that cause of action accrues, starts to accrue, and she has 180 days from when she learned about that to file her charge. She didn't file her charge until May 31st, 2022. So any alleged failure to accommodate claim that accrued before December 2nd of 2021 is time barred, not only for failure to exhaust administrative remedies, but because she didn't file a EEOC charge in time. Is there anything in the record that reflects when she learned that she had not been selected for that job and that someone else had been put in that position in November of 2021? I don't know if there's something specifically in the record other than her saying that, you know, she learned while she was out on leave, you know, in September 2021, that she learned that she wasn't given that position. It was given to somebody else that was not disabled. So she learned at least in September 21, and then when she went out on leave again in November 2021. So there's no allegations that any of these failure to accommodate claims accrued after December 2nd, 2021, which she would have had to file. So there's not only a failure to accommodate because she didn't raise them in the charge or in the complaint, anywhere in the complaint, all of these additional things came up. These all came up during her deposition. And she said, well, they didn't accommodate me in 2016 and 2017 and 2020 and 2021. It's like, well, that's nowhere in the complaint. And even if she tried to raise them at any point, we would have moved to dismiss them because they were not timely brought. So with regard to failure to accommodate claim, the threshold issue is whether she was a disabled person under the ADA, which means that she has to be able to show that she could perform the essential functions. Here, she cannot perform the essential functions because in order to, her essential function here is standing for prolonged periods. The law does not require Carlisle to relieve gross of that prolonged standing. And Carlisle is not required to relieve her. So her saying, well, they didn't transfer me to the receiving, you know, the receiving clerk position, that's not a reasonable accommodation as a matter of law. Because in order for her to be reasonably accommodated, it has to be something that doesn't remove the essential functions. For example, maybe if she said, well, I can stand for a really long time, but I sweat a lot, right? So I need a fan. And Carlisle said, no, you can't have that fan. Well, then that's a reasonable accommodation that Carlisle denied. But for her to say, I can't stand for a long period of time, you need to move me to another position, that's removing the essential function of her job, which means she's not a qualified individual of the ADA. So we don't even get to the argument of whether there was a reasonable accommodation or an interactive process. There is no interactive process when the employee cannot perform the essential function. That is the second prong. You have to pass that essential function test in order to even get to the accommodation. But even if we were to go to that second prong, gross cannot be accommodated as a matter of law because, one, there were no vacant positions at the time of her termination. When she was terminated, the only evidence on the record is that there were no vacant positions, and that's from the declaration from McGowan. Now, counsel on the other side has raised the evidentiary issue with regard to business records, but that evidentiary issue was not raised at the district court level, so that evidentiary issue is waived and is not before the court. The district court didn't deal with that, and in the reply brief, counsel tries to say that, well, I did raise the issue, but the issue that was raised was to the scope. He said that McGowan only talked about at the time of termination, but there was no discussion about all the other times, whether there was vacant positions. But the courts that have addressed this issue have held that the pertinent timeframe is at the time of termination. Not before or after. At the time of termination, were there any vacant positions? And there were not. And there's no record, no evidence in the record that there were any vacant positions at that time. In addition, the 8-8 does not require Carla to create a position for growth. So one of the other accommodations that she claims is, oh, well, they should have put me in a line watcher position, right? One, that position never existed. Two, there's no requirement for them to create that position for her. The line watcher position is a position where during the entire shift, each employee for 15 minutes would watch the line for quality control issues, going up and down the line, making sure that everything was working correctly. She wanted to do that full time. Well, John Meyer testified that, one, that position doesn't exist, but two, that's not a safety issue. They wouldn't do that because people start to zone out and they miss things. So there's no way that they're going to make that position a full-time position. Before I close here, I just wanted to address two of the questions that were addressed here. Your Honor, you said, was there any evidence that there were any vacancies at the time that she was fired and there is no evidence there was vacancies at the time she was fired? Counsel opposite conceded that. Yes. And in addition, there is a question about whether there is any evidence of pretext in the record. And no, there is no evidence of pretext in the record. Here we have an employee that worked for Carlisle for 18 years. She testified that Carlisle has known about her diabetes, known about her amputations for those 18 years. She took 10 leaves of absence. She always came back without problem. There was no issue with that. The only reason why she was terminated was because of the neutrally applied policy. Now, there's no question that that policy applied. The only evidence is that that policy existed and she was terminated because of that. There's no evidence about any kind of discriminatory motive. There's no negative attitudes about her leaves. There's nothing here to establish pretext or causation. So, in sum, Carlisle respectfully requests that the district court's judgment in its favor be upheld. Thank you. Just a couple points on rebuttal, Your Honors. The idea that these claims are not before the court, the patent case that appellant cited in our reply brief, in that case, I think counsel on the other side missed a little bit of this in that the plaintiff in that case had not even mentioned a failure to accommodate claim in their EEOC charge. There was some language in a questionnaire related to the charge that he requested some assistance and the Fifth Circuit found that that was enough to put the EEOC on notice for its investigatory and conciliatory duties that there was a failure to accommodate claim. Ms. Gross' charge goes further than the charge did in patent and that Ms. Gross states that she requested an accommodation and it was denied. The same thing goes for the complaint. We're not at a Rule 12 stage here. The district court's analysis and this court's analysis is not confined to the allegations that are made in the complaint. We're on summary judgment and so we can get outside of the plaintiff to these other instances that Ms. Gross pointed to in her deposition. The idea that she has to list out every instance of a failure to accommodate in her history of employment, that's borne out in no case law. The only thing that the court could do I think in this case as far as creating new law would be to say that a plaintiff has to list every charge of discrimination or excuse me, every instance of a failure to accommodate in their complaint. I found no case law, I'm aware of no case law that says that. That would be something new. I would just posit to the court that if that is something that the court's going to entertain, that the plaintiff is still allowed to amend her complaint all the way up until trial. I don't think that that's a question that's properly before the court, but I don't think it would comport with the pleading standards that you just give enough factual allegations to state a claim on which relief could be granted, which Ms. Gross did in her complaint. Judge Ramirez, you made a good point as well that some of these older instances, whether they're time barred or not, are evidence of the plaintiff's requests for accommodations and the failure to engage in the interactive process. The failure to accommodate isn't just specific to one specific request for a failure to accommodate. I would point this court to the Cut Radicase that was cited in our brief. In that case, the plaintiff had been employed for I believe about a month and had made no specific requests for accommodations. Had just notified her employer that she had a disability and that she might need some accommodations, but had made no specific requests about what accommodations she wanted. The court found that that was enough to trigger the employer's duty to engage in the interactive process and see if an accommodation might be available to that plaintiff. The employer had not done that. What had the employer done instead? They had sat silently and just terminated the employee rather than engage in that interactive process and see if an accommodation might be available. That was enough, the court found, to get past Rule 56 and get to a jury trial because it creates an issue of factors whether an accommodation was available. This case goes further than Cut Reda did. Ms. Gross made specific requests about certain accommodations that she thought would allow her to do her job. That wasn't even present in Cut Reda, but it was still enough to get past summary judgment. I just don't think that that idea that Ms. Gross had to put these in her complaint or that they're time barred by the statute of limitations, I don't think that that's borne out in the case law because it is good evidentiary material that the employer did not engage in that interactive process. Under the Lousegood case that we cited, the failure to engage in the interactive process is also enough to trigger a violation of the ADA, not just the failure to accommodate, but that failure to engage in the interactive process, which is one of the allegations that we have here. I would also point out that it is not in the record that prolonged standing is a job requirement. I talked about earlier how Ms. Gross' testimony that they shifted her from eight-hour shifts to 12-hour shifts. That's just not in the record. She also testified, and Sharon Thomas and John Mayer supported this, that each one of the line workers takes time off of the line to go do that quality control position, ten to fifteen minutes on the hour, where they're not standing. The idea that prolonged standing was an essential job function, there's an issue of fact over that at best, but I would say that it's not borne out in the record at all because these line workers, like Ms. Gross, were off of their feet for some time, and the idea that eight-hour shift versus 12-hour shift, prolonged standing was not essential. If the court has no more questions, I'll exceed my time. Thank you so much. Your arguments have been submitted. The court is adjourned until 1 p.m. tomorrow.